Filed 2/10/23  P. v. Roberts CA4/2
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074745 |
| v. | (Super.Ct.No. RIF078601) |
| DAVID LEE ROBERTS, | OPINION ON TRANSFER |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Reversed and remanded with directions.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland and Charles C. Ragland, Assistant Attorneys General, Arlene A. Sevidal, Collette C. Cavalier and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

In 2000, a jury convicted defendant David Lee Roberts of first degree murder on a felony-murder theory, found true a robbery-murder special-circumstance allegation, and convicted him of attempted murder. The trial court sentenced him to life without the possibility of parole (LWOP) for the murder and a concurrent sentence of LWOP for the attempted murder. On appeal, this court expressly rejected defendant's claim that insufficient evidence supported the special circumstance finding.

Nineteen years later, defendant petitioned the superior court to vacate his murder conviction and resentence him under Penal Code former section 1170.95,[1] a resentencing statute enacted as part of Senate Bill No. 1437 (2017-2018 Reg. Sess.). In a nutshell, that bill limited the offense of murder under the felony-murder rule to defendants who: (1) are the actual killer; (2) are not the actual killer but who share the killer's intent to kill and aid and abet in the killing; or (3) are a major participant in a felony and who act with reckless indifference to human life. It also eliminated the offense of murder under the natural and probable consequences doctrine. (*People v. Gentile* (2020) 10 Cal.5th 830, 846, 848.) Defendant argued the jury's robbery-murder special circumstance finding was no longer valid under recent decisions of the California Supreme Court and related statutory amendments, and that he could not be convicted today of felony murder. The superior court ruled the jury's special circumstance finding barred him from obtaining relief under former section 1170.95 and summarily denied his petition.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated. Effective June 30, 2022, Assembly Bill No. 200 (2021-2022 Reg. Sess.) amended and renumbered section 1170.95 as section 1172.6. (Stats. 2022, ch. 58, § 10.)

We previously held that defendant's undisturbed and final special circumstance finding barred him as a matter of law from petitioning for relief under former section 1170.95. On October 19, 2022, the California Supreme Court transferred the matter back to us with directions to vacate our decision and reconsider the cause in light of *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*). We vacated our decision on October 20, 2022, and requested supplemental briefs. In their supplemental briefs, the parties agree (1) the trial court erred by summarily denying defendant's resentencing petition at the prima facie review stage, and (2) this court must reverse the order and remand for the trial court to conduct another prima facie review and determine anew whether to issue an order to show cause (OSC) and set an evidentiary hearing on the petition. We agree and so order.

I.

FACTS

We take the facts of the underlying crime from our prior unpublished decision in defendant's direct appeal (*People v. Roberts* (Oct. 12, 2001, E027424) [nonpub. opn.]), of which we take judicial notice. (Evid. Code, §§ 452, subd. (a), 459, subd. (a); see *People v. Allison* (2020) 55 Cal.App.5th 449, 454 & fn. 3.)

"On the evening of November 19, 1997, [codefendant] Johnson and [defendant] left the apartment of [J.T.],[2] [defendant's] sister-in-law, and went together to the nearby apartment of drug dealer, [J.P.], to rob [him] of three ounces of methamphetamine. Before the two men left her residence, where they had been discussing the planned theft, [J.T.] gave Johnson a sweater to use to conceal his gun, a .38-caliber revolver. Johnson knew where [J.P.] stored his merchandise because Johnson's girlfriend, [C.B.], sometimes worked for [J.P.] selling drugs. [C.B.] had introduced Johnson to [J.P.], and she and Johnson had seen [J.P.] take methamphetamine from a bag in his kitchen cupboard. Johnson also knew that [J.P.] had once asked [C.B.] to orally copulate him. When [C.B.] told Johnson about that incident, she also told him that it was all a joke, and that she did not perform the requested service.

"When Johnson and [defendant] arrived at [J.P.'s] apartment, they looked in through a window and saw him smoking methamphetamine with one of his regular customers, [K.W.] [J.P.] had taken the rock the two were smoking from a cigarette pack lying on a coffee table. Johnson knocked on the door; [defendant] stayed outside observing through the window. At [J.P.'s] direction, [K.W.] answered Johnson's knock. Johnson entered the apartment and offered [J.P.] money in an apparent attempt to make a purchase. [J.P.] said Johnson would have to wait a few minutes, inferring, as Johnson apparently understood it, that he did not have the drugs in his apartment or did not want

---

**2** We have omitted the full names of victims and witnesses. (See Cal. Rules of Court, rule 8.90(b)(4), (11); Cal. Style Manual (4th ed. 2000) § 5:9, pp. 179-180, § 5:12, p. 181.)

to make the exchange there. As Johnson and [J.P.] sat talking, [defendant] became impatient and went to the door. [K.W.] heard the doorknob 'jiggling' and told [J.P.] she thought someone was attempting to enter. When [J.P.] got up to answer the door, Johnson followed him.

"[J.P.] did not recognize the person at the door, turned back to Johnson, and asked, 'Who's this?' Johnson walked past [J.P.], briefly put his head outside, then turned around and said, 'Check it out, dude. You want to tell my old lady to suck your dick.' Johnson then shot [J.P.] three times. As the shooting began, [K.W.] saw a second male appear at the door. At the second shot, [K.W.] grabbed the portable telephone from the coffee table and ran to the bathroom. As she fled, she heard more shots, for a total of five or six. When she closed the bathroom door, the mirror shattered. [K.W.] fell to the floor, held the door shut with her feet, and called 911. For a short time after the shooting stopped, she heard the kitchen cupboards being opened and closed.

"When [K.W.] emerged from the bathroom, [J.P.] was lying on the kitchen floor in front of the sink. Johnson, the second male, and the pack of cigarettes containing the methamphetamine were all gone. Police found three bullet holes in the bathroom door, a bullet fragment near the front door, and a bullet hole projected through a pillow into the wall behind the sofa. Two bullets were recovered from [J.P.'s] body at the autopsy.

"[Defendant] and Johnson arrived back at [J.T.'s] apartment in a state of excitement within about [10] minutes after they had left it. [Defendant] arrived before Johnson. Both defendants were nervous, cursing, and upset. They had found no drugs. Johnson indicated to [J.T.], by gesture and with words, that he had shot [J.P.] Johnson left [J.T.'s] apartment about daylight. At home, he shook [C.B.] awake and told her that he had just shot [J.T.] and had to leave. He warned [C.B.] that the police would be arriving and told her to deny knowing him. When [C.B.] asked why Johnson shot [J.T.], he 'said something about the sexual remarks that [J.T.] made to [C.B.]' Over the next few days, Johnson repeatedly came to [J.T.'s] apartment and warned her, and told her to warn [defendant] not to 'talk.' A friend of Johnson's, [S.S.], assaulted [J.T.], indicating as he did so that the beating was because her brother-in-law, [defendant], was 'talking.' Three to four weeks after the shooting, [defendant] moved away from [J.T.'s] apartment. Johnson was arrested in February 1998 in Riverside. [Defendant] was arrested in Colorado in April 1998." (*People v. Roberts*, *supra*, E027424.)

## II.

## PROCEDURAL HISTORY

### A. *Defendant's Trial, Convictions, and Sentence.*

The prosecutor tried defendant on a felony-murder, aider and abettor theory. Hence, the trial court appropriately instructed the jury with modified CALJIC Nos. 8.10, 8.21, and 8.27 for count 1.

Relevant here, the trial court instructed the jury with a modified CALJIC No. 8.80.1 that the robbery-murder special circumstance allegation required the prosecutor to prove beyond a reasonable doubt that defendant, who did not actually kill J.P., either (1) shared Johnson's "intent to kill" and aided and abetted in committing the first degree murder, or (2) acted "with reckless indifference to human life as a major participant" and aided and abetted Johnson in the commission of the robbery, which resulted in J.P.'s death.[3] The instruction explained that a defendant acts with "reckless indifference to human life" when he "knows or is aware that his acts involve a great risk of death to innocent human beings." In addition, the trial court granted defendant's request for a pinpoint instruction on the meaning of "'major participant.'" The court

---

[3] In its entirety, CALJIC No. 8.80.1 was read to the jury, by the trial court, as follows: "If you find the defendant in this case guilty of murder of the first degree, you must determine if the following special circumstance is true or not true: murder in the commission of a robbery or attempted robbery.

"The People have the burden of proving the truth of this circumstance. If you have a reasonable doubt as to whether the special circumstance is true, you must find it not true.

"If you find that a defendant was not the actual killer of a human being, you cannot find the special circumstance to be true unless you are satisfied beyond a reasonable doubt that such defendant, with the intent to kill, aided, abetted, counseled or assisted any act or—in the commission of murder in the first degree, or with reckless indifference to human life as a major participant, aided, abetted, counseled, or assisted in the commission of the crime of attempted robbery or robbery, which resulted in the death of a human being, [J.P.]

"A defendant acts with reckless indifference to human life when that defendant knows or is aware that his acts involve a great risk of death to innocent human beings. In order to find a special circumstance alleged in this case to be true or untrue, you must agree unanimously. You will state that special finding as to whether this special circumstance is true or not true on a form that will be supplied."

instructed the jury that a "major participant is one whose role is notable, one of importance, not trivial in nature."

The jury convicted defendant of first degree murder (§ 187, count 1) and attempted murder (§§ 664, 187, count 2), and found true the robbery-murder special circumstance allegation (§ 190.2, subd. (a)(17)(A)) and allegations that defendant was a principal and was armed with a handgun during the commission of the murder and attempted murder (former § 12022, subd. (a)(1)). (*People v. Roberts*, *supra*, E027424.)

The trial court sentenced defendant to LWOP for the special circumstance murder; a concurrent sentence of life with the possibility of parole for the attempted murder conviction; and one year each for the two firearm enhancement findings, which were stayed pursuant to section 654. (*Ibid.*)

B. *Defendant's Direct Appeal—People v. Roberts*, *supra*, E027424.

On appeal, defendant argued, inter alia, substantial evidence did not support the jury's true finding on the robbery special circumstance allegation. (*People v. Roberts*, *supra*, E027424.) This court noted: "[A] finding of special circumstance robbery-murder as an aider and abettor must be based on evidence not only that the murder was committed in the course of and in furtherance of a robbery, but that he shared the killer's intent *or* that he acted as [a] major participant and with reckless indifference to human life." (*Ibid.*) We held the record contained substantial evidence from which a jury could find beyond a reasonable doubt that defendant aided and abetted Johnson and shared Johnson's intent to kill J.P., *and* that he was a major participant in the robbery who acted with reckless indifference to human life. (*Ibid.*)

8

With respect to sharing Johnson's intent to kill, we stated: "There was plenty of evidence here that [defendant] shared Johnson's intent to rob the victim. Knowing of Johnson's intent to take [J.P.'s] methamphetamine, [defendant] voluntarily accompanied him (twice) to the victim's house, anxious to get his 'half of whatever.' And there was evidence that [defendant] shared Johnson's intent to kill if necessary to further the robbery. [Defendant] knew Johnson was armed and angry; he watched the progression of events through the victim's window; and, when things seemed to be 'taking to[o] long,' he went to the door to find out 'what the hell [was] going on.'" (*People v. Roberts*, *supra*, E027424.)

As for defendant having been a major participant in the robbery, we stated: "[Defendant] did not merely stand at the door while someone else committed a crime. He was a major participant. He planned the crime with Johnson before they went (twice) to the apartment. He knew of Johnson's dual intent—to rob [J.P.] and possibly to satisfy a personal grudge. He knew Johnson had a gun: he saw it at least when Johnson showed it to him and said, 'Look what I got,' just before he entered [J.P.'s] apartment, and possibly even before they left [J.T.'s] apartment. [Defendant] watched what was going on inside from the window. He went to the door, knocked or jiggled the handle, and asked Johnson what the hell was going on when he decided they were doing too much talking and things were taking too long." (*People v. Roberts*, *supra*, E027424.)

And, finally, we concluded the evidence demonstrated defendant acted with reckless indifference to human life. "He was clearly 'subjectively aware that his or her participation in the felony involved a grave risk of death.' [Citations.] [Defendant] admitted that when Johnson showed him the gun he told him he was going to use it to intimidate the victim and 'to make [him] give him his shit.' In fact, [defendant] said, it was his realization that Johnson intended to use the gun that made him ([defendant]) want to back out: 'Well I don't want know [*sic*] part of that.' This well-expressed fear demonstrated his awareness that his participation in the robbery involved the grave risk of death to the victims. Nonetheless, in reckless indifference to their fate, he followed Johnson's instruction to 'wait right here.' Not only that, he hurried Johnson along with their joint project by going to the door and jiggling the handle." (*People v. Roberts*, *supra*, E027424.)

In summary, we held "[t]he jury could reasonably find from the evidence that [defendant] was a major participant in the robbery, had a subjective awareness of the extreme likelihood that [J.P.] could be killed, and acted with reckless indifference to whether the victim lived or died."[4] (*People v. Roberts*, *supra*, E027424.)

---

[4] The California Supreme Court denied defendant's petition for review. (See *People v. Roberts*, review denied Jan. 3, 2002, S102056.)

10

C.      *Defendant's Petition for Resentencing Under Former Section 1170.95.*

In March 2019, defendant filed the instant petition in the superior court for relief under former section 1170.95. Using a check-box form, defendant alleged he was convicted of first degree murder "pursuant to the felony murder or the natural and probable consequence doctrine," but he could no longer be convicted under those theories. The district attorney opposed the petition, contending Senate Bill No. 1437 was unconstitutional.[5] In the alternative, the prosecutor argued defendant could not make a prima facie case for relief under former section 1170.95 because the record demonstrated he had been convicted of first degree murder with a true finding on the robbery-murder special circumstance. Therefore, the jury had found beyond a reasonable doubt that he had the intent to kill, or was a major participant in the robbery, and acted with reckless indifference to human life.

During the hearing on the petition, the superior court addressed this court's decision in defendant's direct appeal. The court acknowledged we had concluded the evidence supported a finding that defendant shared Johnson's intent to kill for purposes of the robbery-murder special circumstance (a portion of the opinion the trial court described as "odd"), but stated the "[m]ore important" section of the opinion was the one addressing evidence that defendant was a major participant who acted with reckless indifference to human life. After quoting the relevant pages, the court stated: "For the

---

[5] This court has since rejected the same arguments made by the prosecutor in this case and concluded Senate Bill No. 1437 is constitutional. (*People v. Johns* (2020) 50 Cal.App.5th 46; *People v. Lippert* (2020) 53 Cal.App.5th 304.)

11

reasons stated in this case and others, the defendant has had all that the law requires. He has had the finder of fact determine beyond a reasonable doubt that he was a major participant, acting with a reckless indifference to human life, or that he harbored a specific intent to kill." The court noted the jury's findings had been "reviewed" and "approved" on appeal. Therefore, it summarily denied defendant's petition.

## III.

## DISCUSSION

In the supplemental briefs filed after the California Supreme Court remanded this case to reconsider the cause in light of *Strong*, *supra*, 13 Cal.5th 698, the parties agree the trial court erred by finding that defendant had not made a prima facie showing for relief under former section 1170.95 because his first degree murder conviction and the jury's robbery-murder special-circumstance finding occurred before our Supreme Court issued its decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). Those decisions "clarified the meaning of the special circumstances statute" (*In re Scoggins* (2020) 9 Cal.5th 667, 671), specifically, the requirement under section 190.2, subdivision (d), that a defendant who is "'not the actual killer'" and is convicted of first degree murder is eligible for the sentence of death or LWOP only if the jury finds he acted with reckless indifference to human life and was a major participant in the commission of the underlying felony, which resulted in the death (*Scoggins*, at p. 674).

"Senate Bill 1437 [(2017-2018 Reg. Sess.)] significantly limited the scope of the felony-murder rule to effectuate the Legislature's declared intent 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*Strong*, *supra*, 13 Cal.5th at pp. 707-708.) "Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended. [Citations.] Under newly enacted section 1172.6, the process begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citations], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to . . . Section 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill 1437 [citation]." (*Id.* at p. 708, fn. omitted.) "When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Id.* at p. 708.)

"While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for . . . relief, the prima facie inquiry . . . is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, '"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his

13

or her factual allegations were proved. If so, the court must issue an order to show cause.'" [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'" (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id.* at p. 972.) "[T]he 'prima facie bar was intentionally and correctly set very low.'" (*Ibid.*)

Where a defendant's "case was tried before both *Banks* and *Clark*, . . . special circumstance findings do not preclude him from making out a prima facie case for resentencing under section 1172.6." (*Strong*, *supra*, 13 Cal.5th at p. 721.) A court "err[s] in concluding otherwise." (*Ibid.*)

If a defendant has made a prima facie showing of entitlement to relief, "'the court shall issue an order to show cause.'" (*Strong*, *supra*, 13 Cal.5th at p. 708.) "[T]he court must [then] hold an evidentiary hearing at which the prosecution bears the burden of proving, 'beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under state law as amended by Senate Bill 1437. [Citation.] 'A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' [Citation.] 'If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.'" (*Id.* at p. 709.) "Senate Bill 1437 relief is unavailable if the defendant was

either the actual killer, acted with the intent to kill, or 'was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] Section 190.2.' (Pen. Code, § 189, subd. (e)(3); see § 1172.6, subd. (a).)" (*Id.* at p. 710.)

Defendant's jury rendered its robbery-murder special-circumstance finding long before the California Supreme Court decided *Banks* and *Clark*. So, with respect to that finding, "no judge or jury has ever found the currently required degree of culpability . . . ." (*Strong*, *supra*, 13 Cal.5th at p. 718.) Notwithstanding our original determination in this appeal, the jury's special circumstance finding did not by itself render him per se ineligible for relief under section 1172.6. In sum, we must conclude that the trial court erred by denying defendant's petition on that basis alone. The matter must be remanded for a new prima facie hearing.[6]

---

[6] After defendant filed his petition, the Legislature enacted Senate Bill No. 775 (2020-2021 Reg. Sess.), which, effective January 1, 2022, expanded former section 1170.95 to permit recall and resentencing of persons convicted of attempted murder under the natural and probable consequences doctrine. (Stats. 2021, ch. 551, § 2; see *People v. Montes* (2021) 71 Cal.App.5th 1001, 1006.)

In his supplemental brief, defendant argues he must be given the opportunity on remand to amend his petition to seek relief from his attempted murder conviction. Because defendant never presented a request to amend his petition to the trial in the first instance, we agree with the People that the request made here on appeal is premature. We decline to order the trial court to permit defendant to amend his petition, but the denial is without prejudice to defendant timely making such a request to the trial court on remand.

IV.

DISPOSITION

The order denying defendant's petition is reversed. The matter is remanded with directions for the trial court to hold a new prima facie review hearing. We express no opinion on (1) whether defendant is entitled to the issuance of an OSC and an evidentiary hearing on his petition, and (2) whether the trial court should permit defendant to amend his petition to seek relief from his attempted murder conviction, should he timely seek leave to amend on remand.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER  
Acting P. J.

We concur:

MILLER  
J.

FIELDS  
J.

16